IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RITA C. C., | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| vs. | )   Case No. 21-CV-465-JFJ |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|       **Defendant.** | ) |

**OPINION AND ORDER**

Plaintiff Rita C. C. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for supplemental security income under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Court **AFFIRMS** the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.**     **General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established

by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. § 416.921. *See* 20 C.F.R. §§ 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing his past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**II.     Procedural History and the ALJ's Decision**

On October 28, 2019, Plaintiff, then a 39-year-old female, applied for Title II disability insurance benefits and Title XVI supplemental security income benefits. R. 13, 189-201. Plaintiff alleges that she has been unable to work since an amended onset date of October 28, 2019, due to bipolar disorder, anxiety disorder, panic attacks, memory loss, and social anxiety. R. 14, 32-33, 235. Plaintiff's claims for benefits were denied initially and on reconsideration. R. 63-107. ALJ Deirdre O. Dexter conducted an administrative hearing and issued a decision on March 4, 2021, denying benefits and finding Plaintiff not disabled. R. 13-22, 27-58. The Appeals Council denied review on August 20, 2021 (R. 1-7), rendering the Commissioner's decision final. 20 C.F.R. § 416.1481. Plaintiff filed this appeal on October 27, 2021. ECF No. 2.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of October 28, 2019. R. 16. At step two, the ALJ found that Plaintiff's major depressive disorder, generalized anxiety disorder with panic attacks, bipolar disorder II with rapid cycling, and post-traumatic stress disorder ("PTSD") were severe impairments. *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. R. 17-18.

After summarizing Plaintiff's hearing testimony, the objective medical evidence in the record from the relevant period, and the medical source opinion evidence, the ALJ concluded that Plaintiff had the RFC to perform work at all exertional levels with the following non-exertional limitations:

> understand, remember, and perform simple tasks consistent with SVP 1 and SVP 2 work, except SVP 2 work with a reasoning level of 3. She is able to interact with supervisors as needed to receive work instructions and is able to work in proximity to coworkers, but a job should not involve teamwork or other work where close communication or cooperation with coworkers is required. A job should not involve interacting with the general public. The claimant would work best in a job where she can work mostly alone.

R. 18.

At step four, the ALJ concluded that Plaintiff did not have past relevant work. R. 20. Based on the testimony of a vocational expert ("VE"), however, the ALJ concluded at step five that Plaintiff could perform other occupations existing in significant numbers in the national economy, including floor waxer, industrial sweeper/cleaner, and merchandise marker. R. 20-21. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 21. Accordingly, the ALJ concluded Plaintiff was not disabled. R. 22.

**III.   Issues**

Plaintiff raises two points of error in her challenge to the Commissioner's denial of benefits, which the undersigned re-organizes into four for clarity: (1) the ALJ failed to consider all of Plaintiff's mental impairments at step two of the sequential analysis and in forming the RFC; (2) the ALJ erroneously relied on the state agency psychologists' outdated opinions; (3) the ALJ failed to account for Plaintiff's moderate limitation in concentration, persistence or pace in the RFC; and (4) the ALJ erroneously relied on VE testimony in response to a hypothetical question that did not include all of her limitations at step five. ECF No. 12.

**IV.   Analysis**

   **A.   ALJ's Step-Two Analysis Was Proper**

Plaintiff argues that the ALJ failed to adequately consider her PTSD, major depressive disorder, and bipolar II disorder at step two of the sequential evaluation. ECF No. 12 at 5-6.

At step two of the sequential evaluation, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii); *Williams*, 844 F.2d at 750. In making such determination, the ALJ considers only the claimant's impairment(s) and evaluates "the impact the impairment would have on h[er] ability to work." *Hinkle v. Apfel,* 132 F.3d 1349, 1352 (10th Cir. 1997). A claimant's impairment or combination of impairments is severe if it "significantly limits [her] physical or mental ability to do basic work activities."[1] 20 C.F.R. § 416.920(c); *Allman v. Colvin,* 813 F.3d 1326, 1330 (10th Cir. 2016). An impairment is not severe if the medical evidence establishes only a slight abnormality or a

---

[1] Basic work activities are "the abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 416.922, including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a work setting." SSR 85-28, 1985 WL 56856, at *3.

5

combination of slight abnormalities with a minimal effect on an individual's ability to work. *See* Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *2 (January 1, 1985). Plaintiff's burden at step two is a *de minimis* showing of impairment, but the Plaintiff must demonstrate "more than the mere presence of a condition or ailment." *Hinkle,* 132 F.3d at 1352.

It is unclear why Plaintiff argues the ALJ ignored her PTSD, major depressive disorder, and bipolar II disorder when determining whether she had a medically severe impairment or combination of impairments. Not only does the ALJ's decision clearly reflect she considered these conditions at step two, but it also reflects the ALJ found they constituted severe impairments. R. 16. In any event, even assuming the ALJ did fail to identify a medically determinable mental impairment at step two, such error would be harmless because the ALJ thoroughly evaluated the evidence related to Plaintiff's mental impairments in her discussion of the RFC, as explained in Part IV.B. below. *See Ray v. Colvin,* 657 F. App'x 733, 734 (10th Cir. 2016) (citing *Wells v. Colvin,* 727 F.3d 1061, 1069 (10th Cir. 2013) ("[A] failure to find an impairment medically determinable is essentially a step-four error," that is "obviated if the ALJ considered the non-medically determinable impairment in assessing the RFC."). The Court identifies no step-two error in the ALJ's consideration of Plaintiff's PTSD, major depressive disorder, and bipolar II disorder.

  **B.** **ALJ Did Not Err in Formulating the RFC**

Plaintiff asserts the ALJ's RFC determination is not supported by substantial evidence, because she relied on the state agency psychologists' outdated opinions, failed to account for all her mental impairments and limitations, and improperly formed her own medical opinion regarding Plaintiff's limitations. ECF No. 12 at 4-8. A claimant's RFC is her "*maximum remaining ability to do sustained work activities in an ordinary work setting*" for 8 hours a day, 5 days per week despite her medical impairments and symptoms. SSR 96-8p, 1996 WL 374184, at

6

*2 (July 2, 1996). In assessing the RFC, the ALJ must "include a narrative discussion describing how the evidence supports each conclusion" as to the claimant's work-related limitations. *Id,* at *7. In other words, the ALJ must explain the basis for the limitations included in the RFC assessment with citations to "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id*. Additionally, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence" of record were considered and resolved. *Id.* If the RFC conflicts with a medical source opinion, the ALJ must "explain why the opinion was not adopted." *Id.*

### 1. ALJ Properly Evaluated the State Agency Psychologists' Opinions

State agency psychologist Dr. James Sturgis reviewed the medical record and completed a mental RFC assessment on December 19, 2019. R. 67-71. Dr. Sturgis found Plaintiff could perform simple and some complex tasks, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but she could not relate to the general public. R. 71. State agency psychologist Dr. Cynthia Kampschaefer affirmed Dr. Sturgis' findings at reconsideration in an opinion dated April 2, 2020. R. 89-93.

As part of her analysis of the medical source opinion evidence, the ALJ found the state agency psychologists' opinions partially persuasive. R. 20. The ALJ incorporated the social interaction limitations they identified into the RFC, but found their limitation to semi-skilled work inconsistent with Plaintiff's testimony regarding her difficulty focusing while working and her report to Dr. Hayes that she had trouble concentrating. *Id.* The ALJ then explained that she further limited Plaintiff to unskilled work due to her mental symptoms. *Id.*

Plaintiff argues the ALJ erred by relying on the state agency psychologists' opinions as substantial evidence, because they rendered their opinions without the benefit of Dr. Hayes'

treatment notes. ECF No. 12 at 4-5. According to Plaintiff, Dr. Hayes' treatment notes changed "the entire complexion" of this case during the relevant period. ECF No. 12 at 5.

Plaintiff established care with Dr. Hayes on July 24, 2019, and reported anxiety, "black out panic attacks," poor sleep, low energy, low appetite, anhedonia, difficulty concentrating, and racing thoughts. R. 677-78. On mental status examination, Dr. Hayes' found Plaintiff had a dysphoric and anxious mood, labile affect, and fair judgment and insight. *Id.* Dr. Hayes diagnosed Plaintiff with generalized anxiety disorder, panic attacks, major depressive disorder, chronic PTSD, and bipolar II disorder with rapid cycling. R. 676, 680. He prescribed an anti-depressant medication "for anxiety." R. 680. At a follow-up appointment on December 10, 2020, Plaintiff indicated she was "ok," her mood was "up and down," and her anxiety was the same. R. 683. Thereafter, Dr. Hayes prescribed medications for Plaintiff's mood and panic attacks in January 2020 and he prescribed an additional medication for her anxiety in September 2020. R. 684.

Despite Plaintiff's claim to the contrary, Dr. Hayes' treatment notes do not demonstrate a material change or worsening of Plaintiff's mental condition since December 2019 such that the state agency psychologists' opinions became stale. Plaintiff's mental health treatment before and after December 2019 consisted of medication management for symptoms related to anxiety, depression, and bipolar disorder. R. 345-53, 368-76, 383, 527-32, 676-86. Although the state agency psychologists were unaware of Dr. Hayes' PTSD diagnosis, Dr. Hayes' treatment was limited to prescribing medications for Plaintiff's anxiety, mood, and panic attacks, all of which they considered. R. 68, 79, 90, 104, 680. Therefore, there was no material change rendering the records stale. *See Tarpley v. Colvin*, 601 F. App'x 641, 644 (10th Cir. 2015) (finding the ALJ did not err by giving significant weight to a state agency physician's opinion that was provided prior to availability of subsequent medical records, in part, because "nothing in the later medical records

. . . supports . . . a material change in [the claimant's] condition that would render [the physician's] opinion stale"). In any event, as discussed below, the ALJ considered all of Dr. Hayes' treatment notes and included additional limitations in the RFC based on them. Accordingly, the Court identifies no error based on the alleged staleness of the state agency psychologists' opinions.

### 2. ALJ Accounted for all of Plaintiff's Impairments and Limitations

Plaintiff asserts that the ALJ erred in his RFC assessment, because he ignored Plaintiff's PTSD, major depressive disorder, and bipolar II disorder. Plaintiff contends the ALJ should have included additional limitations in the RFC to account for these impairments, and points to Dr. Hayes' treatment notes as support for this contention. ECF No. 12 at 5-7.

The Court finds no error in the ALJ's analysis of Plaintiff's mental impairments. The ALJ thoroughly discussed Plaintiff's hearing testimony and the findings of her treating and reviewing physicians in the RFC discussion. R. 18-20. The ALJ noted Plaintiff's testimony that she has trouble staying focused for eight hours; experiences "black out panic attacks"; is anxious and stressed in public; and that her bipolar disorder primarily manifests as depression, but she has manic cycles at least once per month lasting 2-5 days. R. 18-19.

In the RFC discussion, the ALJ explained that she incorporated the social interaction limitations identified by the state agency psychologists into the RFC but rejected their opinion that Plaintiff could perform semi-skilled work. R. 20. Instead, the ALJ further limited Plaintiff to understanding, remembering, and performing "simple tasks consistent with SVP 1 and SVP 2 work, except SVP 2 work with a reasoning level of 3"[2] due to Plaintiff's "mental symptoms such as reduced concentration/focus, mood lability, difficulty controlling her temper/poor anger

---

[2] An SVP of one or two corresponds to unskilled work. SSR 00-4p, 2000 WL 1898704, at *3 (December 4, 2000). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. 416.968(a).

management, anxiety, panic attacks, difficulty interacting with others, poor sleep, low energy, anhedonia, racing thoughts, and depression . . . ." *Id.*[3] The Court concludes the ALJ considered the evidence related to Plaintiff's mental impairments and explained how such evidence supported the RFC assessment. *See Barnett v. Apfel,* 231 F.3d 687, 689 (10th Cir. 2000) ("The ALJ is charged with carefully considering all the relevant evidence and linking his findings to specific evidence."). Notably, the ALJ's RFC was more restrictive than the state agency psychologists' opinions, and Plaintiff does not identify any evidence the ALJ failed to consider. Thus, Plaintiff's assertion that the evidence supports greater functional limitations than the ALJ found amounts to a request that the Court reweigh the evidence in her favor, which the Court cannot do. *See Oldham v. Astrue,* 509 F.3d 1254, 1257-58 (10th Cir. 2007) ("We review only the sufficiency of the evidence, not its weight . . . . Although the evidence may have also supported contrary findings, we may not displace the agency's choice between two fairly conflicting views[.]") (cleaned up).

Plaintiff further asserts the ALJ failed to account for her moderate limitation in concentrating, persisting, or maintaining pace in the RFC assessment. ECF No. 12 at 8. In assessing Plaintiff's mental impairments under the "paragraph B" criteria at step three, the ALJ discussed Dr. Hayes' treatment notes, Plaintiff's October 2020 emergency room visit, Plaintiff's hearing testimony, and the mental status examinations of record. R. 17. The ALJ concluded that Plaintiff had a mild limitation in the mental functional area of adapting or managing oneself and moderate limitations in the areas of understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. *Id.* Because Plaintiff's mental impairments did not cause at least two marked limitations or one extreme limitation, the ALJ determined that Plaintiff's mental impairments did not satisfy the "paragraph B" criteria. *Id.*

---

[3] Many of these symptoms appear in the History of Present Illness ("HPI") section of Dr. Hayes' treatment notes. R. 677, 683.

Plaintiff specifically asserts the ALJ's RFC limitation of "simple work" does not account for the moderate limitation in concentrating, persisting, or maintaining pace the ALJ identified at step three. ECF No. 12 at 8. However, an ALJ is not necessarily bound by her step-three findings when determining a claimant's RFC, because "the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p at *4. The mental RFC assessment used at steps four and five requires a "more detailed assessment" of the of the various functions contained in the broad mental limitation categories listed at steps two and three. *Id.* Furthermore, "[t]he ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Vigil v. Colvin,* 805 F.3d 1199, 1203 (10th Cir. 2015).

Contrary to Plaintiff's assertion, the ALJ "can account for moderate limitations by limiting the claimant to particular kinds of work activity" in the RFC assessment. *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016); *see also Vigil*, 805 F.3d at 1204 ("[T]he ALJ accounted for [the claimant's] moderate concentration, persistence, and pace problems in his RFC assessment by limiting him to unskilled work."). As set forth above, the ALJ accommodated Plaintiff's mental impairments, including her moderate limitations in the four "paragraph B" areas. The ALJ adopted the state agency psychologists' narrative RFC limitations as to social interaction, and ultimately imposed a *more restrictive* skill level by limiting Plaintiff to unskilled work with *additional limitations* regarding teamwork, communication, cooperation, and isolation. R. 18. Thus, unlike the ALJs in *Chapo v. Astrue,* 682 F.3d 1285, 1290 n. 3 (10th Cir. 2012), and *Weiderholt v. Barnhart,* 121 F. App'x 833, 839 (10th Cir. 2005) (unpublished), which Plaintiff relies on as support, the ALJ in this case included limitations in the RFC beyond a general limitation to simple,

unskilled work and explained her reasons for doing so. Although "[t]here may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations," *Vigil*, 805 F.3d at 1204, the Court finds here that the ALJ sufficiently accounted for Plaintiff's moderate limitation in concentration, persistence, or pace when forming the RFC.

Plaintiff's contention that the ALJ failed to properly consider the combined effect of her various impairments similarly fails because Plaintiff does not point to any records showing that those combined impairments would result in greater functional limitations than the ALJ found. *See Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988) (identifying no error in considering the combined effect of claimant's impairments where ALJ opinion addressed claimant's various impairments, and there was nothing to suggest they were not properly considered).

### 3. ALJ Did Not Form Her Own Medical Opinion

Plaintiff argues the ALJ's RFC is not supported by substantial evidence, because she disagreed with the state agency psychologists' opinion that Plaintiff could perform semi-skilled work and instead limited her to unskilled work in the RFC. ECF No. 12 at 6-7. It is true that "[t]he ALJ may not substitute her own opinion for that of [Plaintiff's] doctor." *Miller v. Chater,* 99 F.3d 972, 977 (10th Cir. 1996) (cleaned up); *see also Kemp v. Bowen,* 816 F.2d 1469, 1476 (10th Cir. 1987) ("While the ALJ is authorized to make a final decision concerning disability, he cannot interpose his own 'medical expertise' over that of a physician . . . ."). However, an ALJ is not required to have a specific RFC opinion to assess Plaintiff's functional limitations. *See Chapo*, 682 F.3d at 1288 (explaining that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question"); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("The ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.") (cleaned up).

In this case, the ALJ included the social the social interaction limitations identified by the state agency psychologists in the RFC, but further limited Plaintiff to unskilled work based on her hearing testimony that she had difficulty focusing when working and her report to Dr. Hayes that she has trouble concentrating. R. 20. In other words, the ALJ's RFC was consistent with the state agency psychologists' social limitations, but more restrictive than their skill-level limitation in light of Plaintiff's own statements. Thus, the ALJ did not form her own medical opinion, but rather relied on the state agency psychologists' opinion, as well as Plaintiff's own statements in arriving at the RFC determination. Because the ALJ thoroughly considered Plaintiff's medical records, the medical source opinion evidence, and Plaintiff's testimony in reaching the RFC assessment, her determination is supported by substantial evidence.

### C. ALJ's Hypothetical Question Was Proper

Finally, Plaintiff contends the ALJ erred in relying on VE testimony in response to a hypothetical question that matched the RFC, rather than including additional limitations to account for her PTSD symptoms, such as "a labile affect [and] mood and energy problems." ECF No. 12 at 7. For the reasons set forth in Part IV.B. above, the ALJ's RFC assessment was supported by substantial evidence and was therefore proper. Plaintiff's argument regarding the hypothetical question posed to the VE fails because it rests on alleged errors in the RFC assessment the Court has already rejected. *See Qualls v. Apfel,* 206 F.3d 1368, 1373 (10th Cir. 2000) ("We have already rejected plaintiff's challenges to the ALJ's RFC assessment. The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in her RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision.").

V.  **Conclusion**

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 22nd day of March, 2023.

*/s/ Jodi F. Jayne*
**JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT**